# J. C. McDONALD, Respondent, v. MORRISON PLUMBING and SHEET METAL COMPANY, a Corporation, Appellant.

Springfield Court of Appeals, January 14, 1922.

1. **MASTER AND SERVANT:** Worker Repairing Gasoline Tank Entitled to Rely on Proper Cleansing. An experienced metal worker employed by a master engaged in the business of repairing gasoline tanks had a right to rely on the assumption that a gasoline tank had been properly cleaned, and that the danger from explosive gas had been eliminated, when he received instructions that the tank was ready for repair.

2. ———: Negligence in Cleansing Gasoline Tank Received for Repairs, Held for Jury. In an action by a metal worker injured by the explosion of a gasoline tank, which had been delivered to his employer for repairs, whether the employer was negligent in not properly cleaning the tank before instructing plaintiff to repair it, *held* for the jury.

3. ———: Instruction Held Erroneous as not Requiring Finding of Negligence on Part of Employer. In an action by a metal worker against master engaged in the business of repairing gasoline tanks, an instruction requiring no more than a finding that gasoline vapor was in the tank, which made it dangerous, and defendant master knew that it made it dangerous and placed plaintiff at work on the tank, *held* erroneous, in that it failed to require a finding of negligence on the part of the master.

4. ———: Mere Employment of Servant in Dangerous Business not Negligence. A master cannot be *held* guilty of negligence merely because he knows the business he is engaged in is of a dangerous character, and sets one of his servants to work at such dangerous business, but it must be pleaded, proven and found that, knowing of such dangerous condition, he failed to take the proper steps to eliminate it, such as an ordinarily prudent person would take, or failed to notify the servant of the dangerous condition.

5. **NEGLIGENCE:** Affirmative Plea of Contributory Negligence not an Admission of Negligence. An affirmative plea of contributory negligence in a personal injury action by a servant, when coupled with a general denial, does not admit negligence on defendant's part.

Appeal from. Circuit Court of Wayne County.—*Hon. E. M. Dearing*, Judge.

REVERSED AND REMANDED.

*Atkinson, Rombauer & Hill* and *J. C. Sheppard* for appellant.

(1) The petition alleges as the grounds of negligence that appellant negligently failed to thoroughly cleanse the tank of gasoline and gasoline vapor, but that it only pretended to cleanse the same of all gasoline and gasoline vapor, and carelessly and negligently left sufficient gasoline therein to form an explosive vapor or gas. The main instruction asked by respondent, and covering the whole case, required the jury to find only that the tank contained gasoline or gasoline vapor, and that it was dangerous, and that appellant knew these facts. The respondent, in order to recover, must prove the specific acts of negligence alleged in his petition. West v. Halliday, 196 S. W. 403. (2) Appellant's instruction told the jury that if they believed from the evidence that respondent was an experienced workman and knew as much of the condition of the tank, its preparation and cleansing for repairs, and the dangers attending the soldering, then he assumed such dangers and your verdict should be for the appellant. There being ample evidence to support this theory the instruction should have been given, and it was error to refuse it. 26 Cyc. 1241; Steinhauser v. Spraul, 127 Mo. 562-563; Berning v. Medart, 56 Mo. App. 450; Knopp v. Waggoner, 195 Mo. 666. (3) The court should have given respondent's instruction, in the nature of a demurrer to the evidence, at the close of respondent's case, for the reason that the evidence of respondent alone clearly showed that there was a dangerous way and a safe way by which he might have soldered the tank, and he voluntarily chose the more dangerous way. Hurst v. K. C. P. & G. Ry. Co.,

146 Mo. 322; Moore v. K. C. Ft. S. & M. Ry. Co., 146 Mo. 527; Montgomery v. Railroad, 109 Mo. App. 88; Thompson on Negligence, secs. 5372-5373. (4) This tank was not an appliance of appellant's in any sense of the word, but came to its place of business from a third party. Appellant was not presumed to know, in fact it was impossible for it to know the condition of the tank prior to its arrival. So far as the testimony shows, the only means by which appellant might have ascertained that there had ever been any gasoline in the tank was what the tank itself showed. This the respondent saw and knew equally as well as appellant, and, therefore, cannot recover. 26 Cyc. 1241; Relay v. Sou. Ry. Co., 155 Ga. 934, 42 S. E. 218. (5) The demurrer to the evidence should have been sustained, because there is a total absence of any evidence showing the want of ordinary care on the part of appellant in furnishing respondent a reasonably safe place to work. He is only required to use ordinary care to see that the servant has a reasonably safe place to work. Porter v. Hannibal & St. J. R. R. Co., 71 Mo. 66; Siela v. Hannibal & St. J. R. R. Co., 82 Mo., 430; Tabler v. Hannibal & St. J. R. R. Co., 93 Mo. 79; Brown v. Chi. B. & K. C. R. R. Co., 95 Mo. 268.

*Henson & Woody* for respondent.

(1) Under the record in this case, plaintiff's evidence must be taken as true and all contradictions thereof, if any there be, disregarded unless of such a character as to demonstrate the falsity of the evidence adduced by him. He is also entitled to every legitimate inference which may be drawn from that evidence. Chenoweth v. Southerland, 141 Mo. App. 272; Rosendale v. D. G. Co., 213 S. W. 169; Brown v. Lumber Co., 202 Mo. 573; Grimes v. Cole, 133 Mo. App. 522; Robertson v. Construction Co., 115 Mo. App. 456. (2) It is the duty of the master to exercise reasonable care, commensurate with the danger to be encountered, to provide the servant with a reasonably safe place to work, and his duty is affirm-

ative, non-delegable, must be continually fulfilled and positively performed. Edwards v. Stave Co., 221 S. W. 747 (10-11); Hall v. Railroad, 165 Mo. App. 120; Jewel v. Mfg. Co., 166 Mo. App. 555; Johnson v. Bolt & Nut Co., 172 Mo. App. 214; Geisman v. Electric Co., 173 Mo. 654; Campbell v. Traction Co., 178 Mo. App. 527; Hayes v. Ice Co., 221 S. W. 705; Edwards v. Stave Co., 221 S. W. 744; Gibbs v. Duvall, 201 S. W. 608 (3). (3) Plaintiff's instruction number one was proper under the pleadings and the evidence. Lass v. K. C. Rys. Co., 233 S. W. 70; Green v. Standard Oil Co., 199 S. W. 749 (6); Fishback v. Dunham, 203 S. W. 217; Davidson v. Transit Co., 211 Mo. 320; Montgomery v. Hammond Pack. Co., 217 S. W. 867; Chapman v. Brown, 192 Mo. App. 78; Quingley v. Transit Co., 180 Mo. App. 287; Pietzuk v. Railways Co., 232 S. W. 992 (5). (4) This case was tried in the lower court by both parties, and especially by the defendant, upon the theory that the tank in question contained gasoline or gasoline vapor and that same was explosive. This theory was submitted to the jury by defendant's instruction found on page 86 of the abstract of the record. It will be tried in this court upon the same theory. Kennedy v. Railroad, 214 S. W. 237; Newton v. Harvey, 202 S. W. 249; Best v. City St. Joseph, 179 Mo. App. 330; Bragg v. Railroad, 192 Mo. 331; McDonald v. Railroad, 219 Mo. 487 (4); Drier v. Bank, 225 Mo. 684; Marr v. Zeidler, 145 Mo. App. 199; Carey v. Railroad, 125 Mo. App. 193; Vollrath v. Stevens, 199 Mo. App. 5; Feltz v. Dunlap, 203 S. W. 651; O'Hara v. Gas Light Co., 244 Mo. 395; White v. Pierce, 213 S. W. 512. (5) The record does not show that plaintiff was foreman of the sheet metal department of defendant, but even if it did, it further shows that defendant, by its president and general manager, appeared and took charge of this particular job and thereby relieved plaintiff from any duty in the premises. Hall v. Railroad, 165 Mo. App. 120; Kennedy v. Gas Light Co., 215 Mo. 688; Hedrick v. Kahmann, 174 Mo. App. 57; Bloomfield v. Const. Co., 118 Mo. App. 259; Bradley v. Railroad, 138 Mo. 305. (6)

Defendant's instruction No. 6 was properly refused. There is no evidence in the record that plaintiff knew as much about the tank as did the defendant, his master. However, although he may have had knowledge equal to that of the master, he could have obeyed the order. of the master and not be guilty of contributory negligence as a matter of law. Henderson v. Mfg. Co., 197 S. L. 181 (4-6); Gilbert v. Hilliard, 222 S. W. 1027; Jewel v. Bolt & Nut Co., 231 Mo. 176; Lampe v. Brewing Co., 221 S. W. 451.; Gibbs v. Duvall, 201 S. W. 609 (4). (7) Plaintiff was not guilty of contributory negligence because he used a blow torch instead of a solder iron. Lampe v. Brewing Co., 221 S. W. 451 (3).

FARRINGTON, J.—This is an action for personal injuries sustained by the plaintiff while in the employ of the defendant. Defendant is engaged in the plumbing and sheet metal business. On the 23rd day of September, 1919, the Model Motor Car Co., which was engaged in selling automobiles, gasoline, etc., and whose plant was located a few blocks from defendant's place of business, brought to the shop of the defendant a galvanized gasoline tank for the purpose of having the same repaired. It was about three feet in diameter and seven or eight feet in length, having three openings in the side, one near each end and one in the middle, the middle opening being the larger of the three. The tank was delivered to the defendant sometime in the afternoon on the day on which plaintiff was injured and when delivered the plaintiff was not at the shop. That afternoon Morrison, manager of defendant company, called plaintiff out to the alley back of the shop where the tank had been placed and asked him if he thought that the same could be repaired so it would not leak. The plaintiff told him he thought it could be repaired, but he could not work on it for twenty or thirty minutes owing to the fact that he was then working on another job. After the tank had been placed in the alley, and before it was shown to plaintiff, defendant had filled it with water and two other men were

put to work cleaning the dirt from around the flanges, the tank being a gasoline tank, buried in the ground, was covered with dirt, water and rust. Plaintiff saw that the tank had been filled with water when he had examined it. When the plaintiff came back from the job on which he was at work when Morrison first spoke to him, Morrison, the manager, told him that the tank was ready for him to repair and that he wanted him to do a good job. The plaintiff got his tools necessary to do the proper soldering, the manager seeing him get ready and seeing him take a blow-torch. The manager then left the premises and was not present when the plaintiff went to work on the tank or when he was injured. When the plaintiff reached the alley and got to the tank he found that the water with which it was filled when he first looked at it, in company with defendant's manager, had been emptied out and one of the men was at work on the tank cleaning off the dirt and rust. In order to mend the tank, the evidence shows, it was necessary to "tin it," that is, to apply a very hot heat to the outside of the tank so that it could be properly soldered. The evidence shows that almost immediately on applying the torch to the tank for this purpose, there was a terrific explosion resulting in most serious injuries to this plaintiff.

After a trial to a jury under the instructions a verdict was rendered in plaintiff's favor, and it is from that judgment the appeal is brought here.

We are convinced that the judgment must be reversed because of the first instruction asked by the plaintiff, and the error contained therein will be made apparent when it is compared with the charging clauses in the petition. We will, therefore, set out a portion of the petition:

"That on said 23rd day of September, 1919, defendant, by and through its authorized agents and servants, showed plaintiff a large tank in the alley adjoining its place of business and instructed and directed plaintiff to repair the same so as to prevent it from leaking. That said tank had theretofore been used to contain gasoline,

the vapor of which is and was highly explosive and very dangerous, all of which was then and there known to defendant; that it was the duty of defendant, before having plaintiff to make the repairs necessary thereon, to use ordinary care to prepare said tank by thoroughly cleaning the same and removing therefrom all gasoline and gasoline vapor, in order to furnish plaintiff a reasonably safe place in which to work. That defendant had assumed said duty and had pretended to clean said tank and to remove therefrom all gasoline and gasoline vapor before it directed plaintiff to repair the same.

"Plaintiff states that, pursuant to said instructions and directions and without any warning of danger whatever, he did, on said 23rd day of September, 1919, while in the exercise of due care for his own safety process to his task of repairing said tank under the belief and with the understanding that defendant had thoroughly cleaned the same, and that it was free from gasoline vapor and with the belief that he could perform the duties assigned to him with safety to himself.

"Plaintiff further states that defendant, in total disregard of its duty in that behalf, had not thoroughly cleaned said tank, and had not removed therefrom all gasoline and gasoline vapor, but, on the contrary thereof, had only pretended to do so, and had carelessly and negligently left sufficient gasoline therein to form an explosive vapor or gas, and that said tank contained said gasoline and gasoline vapor at the time plaintiff began work thereon under his said instructions and directions from defendant.

"Plaintiff states that defendant knew, or by the exercise of ordinary care and caution on its part, could have known that said tank contained gasoline and gasoline vapor, and knew that it was dangerous to make necessary repairs thereon while the same was in that condition.

"Plaintiff states that, while he was engaged in making the repairs on said tank in the usual and customary manner of making such repairs, and as instructed and directed by defendant, and while exercising due care for

his own safety, the gasoline and gasoline vapor contained therein exploded, and the force of said explosion bursted said tank and crippled, injured, etc." —(the petition goes on from this point and alleges the injury sustained).

On reading this petition we can see the grounds of negligence charged. That is, that defendant negligently failed to thoroughly clean the tank of gasoline and gasoline vapor, and that it pretended to clean the same but carelessly and negligently left sufficient gasoline therein to form an explosive vapor or gas. That defendant knew that this condition existed, and that ordinary care would require that it be cleansed. That having assumed to properly clean it, defendant's manager directed plaintiff to repair it and that plaintiff, pursuant to such directions, and without any warning of danger whatever, and in due care for himself proceeded to the task he was set to by his master.

As we view this petition the charge of negligence is, and one that is well stated, that the defendant, a master, who is engaged in the business of repairing gasoline tanks, whose duty it would be to know of the presence of a dangerous gas in this tank, failed to clean the same and make it safe for repairs; and that having failed to do so, knowing the dangerous condition, and being in position where the dangerous condition would have been discovered by ordinary care, it instructed the servant to work on the tank without having given him any knowledge of any dangerous condition or that the same had been improperly prepared for work. This states a cause of action, and we think that on the question of demurrer to the evidence the plaintiff made out a case under this ground of negligence stated in the petition. While the plaintiff may have been an experienced metal worker, and had done a great deal of this kind of work, when he received the instructions from his master that the tank was ready for repair, he had a right to rely on the assumption that it had been properly cleansed and the danger which might arise from gasoline gas had been eliminated.

The appellant contends that it was error to refuse its instruction No. 6. We do not agree with that contention, because there was no testimony tending to show that plaintiff had any knowledge that the tank had contained gasoline vapor, and the uncontradicted evidence shows that he was informed by the manager of defendant company that the tank was ready for repair. Neither do we think there is any room for a directed verdict for defendant in this case on the ground that plaintiff was guilty of contributory negligence. But instruction No. 1 seems to us to require no finding whatever of negligence by the jury, although it winds up by directing the jury to find for the plaintiff if they find the facts which are predicated in the instruction. That instruction reads as follows:

"The court instructs the jury that if they find and believe from the evidence in this case that plaintiff, on the 23rd day of September, 1919, was in the employ of defendant as a sheet metal worker, then you are instructed that it was the duty of defendant to use ordinary care and precaution commensurate with the risk to be encountered to avoid exposing plaintiff to unnecessary danger while so employed, and to use ordinary care to provide him with a reasonably safe place to work.

Now, if you find and believe from the evidence that, on said 23rd day of September, 1919, plaintiff was, by an officer and agent of defendant, directed to repair a large tank so as to prevent the same from leaking, and if you further find and believe that said tank contained gasoline and gasoline vapor and that it was dangerous for plaintiff to make the repairs necessary to be made thereon while same was in that condition, and if you further find and believe that defendant knew of the dangerous condition on said tank on account of the gasoline and gasoline vapor therein, if you find it did contain gasoline and gasoline vapor, or by the exercise of ordinary care on its part could have known of that fact, and if you further find that while plaintiff was attempting to repair said tank in the customary and usu-

al manner of making said repairs, and while exercising care for his own safety, said tank, on account of the presence of gasoline and gasoline vapor therein, exploded and injured him, then you will find the issues for plaintiff.''

In the first place, it required the jury to find that an officer of the company directed the plaintiff to repair a leaking tank. There was no dispute as to this fact. It further required them to find that that tank contained a gasoline vapor which was dangerous to the plaintiff to make repairs when in that condition. There was sufficient evidence from which the jury could hardly reach any other conclusion than that such condition prevailed concerning the tank. It then instructed them that if they found the defendant knew of the dangerous condition of the tank, or by the exercise of ordinary care could have known of the condition, and they found that plaintiff was attempting to repair the tank in the customary and usual manner, and while exercising care for himself the same exploded and he was injured, they would find for the plaintiff. This does not require the jury to find, as alleged in the petition, that defendant had improperly cleansed the tank, or had failed to cleanse it at all, or that defendant had failed to give plaintiff ''any warning whatever of danger.'' In other words, this instruction required no more of a finding than that the gasoline vapor was in the tank which made it dangerous, and defendant knew that it made it dangerous, and that it placed plaintiff at work on this dangerous tank.

It will not do to hold a defendant guilty of negligence merely because it knows the business it is engaged in is of a dangerous character and sets one of its servants to work at such dangerous business. In order to make liability for negligence in such cases it must be pleaded, proven and found that, knowing of such dangerous condition it failed to take the proper steps to eliminate it, such as an ordinarily prudent person would take, or failed to notify the servant of the dangerous condition.

Stookey v. St. L., S. F. Ry. Co.

As stated before, it is not enough to hold a master liable for negligence on the ground that he had placed a servant at work at a dangerous business, but if he had placed him at work at a dangerous business he may be negligent in not having eliminated the danger or used all reasonable precautions to do the same, or in not informing the servant of the dangerous condition and of his failure to have used ordinary care to eliminate it. As was said in Berry v. Kansas City, 128 Mo. App. 1. c. 377, 107 S. W. 415, "It is not negligence merely to employ men to work in places known to them to be dangerous."

The instruction quoted does not require a finding of any failure of duty on this defendant's part unless it be that it is a failure in duty on a master's part to knowingly put his servant at work at a dangerous business.

We do not think that the cases cited by respondent's additional brief cover this question, and we need to cite no authorities to support the proposition that the Supreme Court has held that an affirmative plea of contributory negligence, when coupled with a general denial, does not, by filing such plea, admit negligence on the defendant's part.

For the error contained in plaintiff's instruction No. 1, the judgment will be reversed and the cause remanded.

*Cox, P. J.,* and *Bradley, J.,* concur.